We'll hear next United States v. Alleyne. Good morning again, and may it please the Court. I would ask if I could have three minutes at the end for rebuttal. Granted. Thank you. There really is a single sharp issue, I believe, in front of this Court, and that's whether or not there was sufficient evidence at the trial for a jury to be able to find, beyond a reasonable doubt, the specific intent requirements of the various statutes that Mr. Alleyne was convicted under. What is the standard we're using? I see you arguing that we require rigorous proof of specific intent. Yes. But the cases in which you relied were outgraded by United States v. Caraballo-Rodriguez. Isn't the relevant question for us simply whether any rational, prior fact could have found the essential elements here beyond a reasonable doubt? And in doing that, at this stage, we're also crediting all inferences from the government's paper. Yes, that is the standard. I agree. And why isn't that easily met here? Well, for a variety of reasons. Again, spelled out in detail in the brief, Mr. Alleyne had worked for some ten years under the Stasi standard, the BAH standard. When he moved to the Virgin Islands, he continued to do exactly what he would have done working under the BAH standard. As we know, there's a different standard in the Virgin Islands, the Overseas Housing Act, or the OHA standard, and I agree that he was not in compliance with that. There is absolutely no evidence, though, that he was ever told that these standards were different. He was never given any instruction. Every year, if he would turn in his lease, he was never told that there was a problem with that. What about his certification? Did he have read the OHA permission sheet? And we don't know. It's in the OHA permission sheet. It wasn't introduced into evidence. There's no indication as to what it spelled out, and there's no proof that he actually did receive it. He did sign a certification that was part of a document that involved his application for the OHA. Was that the basis of your Rule 29 motion? The basis of the Tribal Council's Rule 29 motion, I believe, was the evidence in total. I can't recall that he raised that specific point. Isn't that an important point for us to consider, whether he raised that or not? Well, I know the motion was renewed at the end of the trial, and even if it weren't raised, if there's no evidence in the record that the OHA certification had details about what the OHA requirements were... But wasn't there a government testimony that it did explain the OHA requirements? I don't believe so, Your Honor. I believe the government testimony was that he signed an OHA certification, but there was... I don't believe there was testimony that the document he had certified had any of those kinds of details in it. Also, there was no one who testified that they instructed him. There was nobody who testified that they actually gave him such a document. And so there's just simply no evidence that goes to what his knowledge was. And for him to have specific intent to violate a Rule, there has to be some evidence that he knew what that Rule was, that he understood it, and that he then intentionally took steps to violate it. Even under the BAH program, however, isn't it the case that he would need to actually be paying some rent in order to claim the allowance? And here, for only two months or more, he was paying none at all.  First, as I understand it, under the BAH program, the one in the U.S. that he had worked under for some ten years, you are given a specific allowance based on your zip code, and they look at the various rents in that area, and there's a fixed amount. And you receive that. If you rent for less than that, you obviously can keep the difference. If you rent for more than that, you have to pay that yourself. You just get a flat amount. If you decide to sleep in your car, it seems to me that you would be able to keep the whole thing. In other words, there's no requirement that you return any portion of what you receive. What you do have to do under the OHA, which is the one in the Virgin Islands, is you're not paid a basic entitlement allowance, as you are in the States. Instead, you present a lease, and you're paid the amount of that lease. But the government's position is that under the BAH program, you are expressly prohibited from taking that allowance if you're not in fact paying some rent. Well, I think you have to have a lease. I don't know the decision you have to actually pay rent. And that raises part two of what I'd like to say about that, and that is that the lease that he had with his mother, as we pointed out in our brief when we quoted the permit basically gives his mother the discretion to defer payment. He still owes her funds that he's not paying her. She owes her girls money that she doesn't pay. So the only charges he was charged with here was the last three years? Yes. As I understand. Statute of limitations. Statute of limitations issue. But the last three months, or the three months after the notice came out to comply with the reimbursement, he then deposited these checks to his mother in an account that he added his mother's name to, which the mother had no knowledge of, no way to access that account. Doesn't that show, you know, can't we infer, and couldn't a jury, more importantly, couldn't a jury infer from that action that he knew what he was doing was in violation of the OHA? You know, I believe the record shows that one of the officials there, I believe Mr. McConnell, put out a directive that he wanted to see, you know, cancel checks or something like that that would memorialize what was being done, and that as a result of that, Mr. Lane actually deposited the checks, added his mother's name to an account that he had, yes, deposited the checks into that account so that they would be the paper record. And her mother, his mother, was entitled to withdraw if she wished, and my understanding from the record was that she knew such an account existed, but she did not make any withdrawals. I believe that's the factual pattern. And that, of course, was a decision on her part, as I understand it. And I don't believe that a reasonable jury could conclude from that, that he understood the details of the OHA and knew that he was intentionally trying to circumvent it. No, he does say in a certification form, and I know it's small print, and I know that sometimes people don't read these, but that's no defense. He said he read the Overseas Housing Allowance Briefing Sheet provided by Commander Rothfeld's representative. Yes. And he certifies that. He does, Your Honor. I agree. Whether or not he read that, the record is— You'll agree it's not a defense so you can say, oh, I didn't read it. I agree on—well, maybe it is because we're looking at specific intent. And if he didn't read it, that obviously may open him up to some liabilities, but that doesn't prove beyond a reasonable doubt that he had specific intent. But going further, we don't know what that briefing sheet said. We don't know if it spelled out in detail the sorts of things that would have alerted him to the fact, well, okay, I can't be doing this. We just don't know because it's not in the record, and it's the government's burden to prove that point beyond a reasonable doubt, which it hasn't done because it didn't put that evidence in. The jury is entitled to draw inference as well, and given the terms of the certification, the testimony of government witnesses, and his conduct after the November memo, why isn't that sufficient circumstantial evidence from which a rational jury could draw the inference that he acted with specific intent? That's not to say that a rational jury couldn't draw the opposite inference that you are arguing it should have drawn, but if a rational jury could conclude that there was specific intent, that is dispositive disappeal, right? If a rational jury could so conclude, yes, it would be dispositive, but I don't believe that a rational jury could so conclude based on that evidence. I believe for a rational jury to say, we're persuaded beyond a reasonable doubt, not that we suspect or are more likely to know, but beyond a reasonable doubt, they would at least need to know what was in the reading sheet that he was given. They don't even know that. And my position would be that based on the very facts that we have here, beyond a reasonable doubt is a high standard, and could someone reasonably make that conclusion on this evidence? No. Mr. Ray, was sentence stayed in this case? No, he was sentenced basically to 18 months. He got 18 months, so he's probably served most of that term by now. He's served most of it. I think he gets out around October of that time, right? Okay. Well, thank you very much. I see my time is up. Oh, that's a yellow light, it's not a red light, so I can keep going. Well, that is my argument. Do you have any more questions about that? I guess sort of a question I asked, similar to the question I asked you on Tuesday. Yes. You're not on the brief that's submitted in this case. Yes, I wrote the brief that was submitted. I didn't try the case. I was detained by Mr. Lane after the trial. Well, maybe you're not with Hamm and Eckert. I used to be with them. I was with Hamm and Eckert for a couple of months, and that was during the time that that brief was written. Okay, so then you actually did write the reply brief. Yes, I wrote both. Actually, your name is on the reply brief. Yes, sir. But I guess I'm just, it seems to me your argument is a little different here today, or maybe more refined than it was in the brief, and that you relied on these cases, which were drug conspiracy cases, which Carabello Rodriguez specifically overturned. I mean, what's your legal basis for the argument that there's this heightened specific intent requirement that you were alluding to today in the argument? I have to agree that the same standard would be applied to the proof of the honor reason without any element of offense would apply to the specific intent requirement. Okay, so your argument today is different than what the argument was in your brief. Only to that extent, yes. Only to that extent. I think we come out of the same place, though, because I still think that even without applying a heightened reasonable jury standard beyond a reasonable doubt, it would still be impossible to say a jury, a rational jury, could conclude beyond a reasonable doubt on these facts, that Mr. O'Lane understood the details of the Overseas Housing Act and made a conscious decision to violate that law in the United States. Do you also agree that the conduct after the November memo, which a rational jury could perhaps construe as cover-up kinds of activities, there is relevance, that there is an inference of intent that can be drawn from those activities even after the fact? I mean, I understand that those categories are questioned, yes. Again, the fact that he responded the way that he did to the Colonel, and that is make sure that there was a paper record as was requested, shows that he was actually in compliance with what he was being asked to do. And even if you say, well, maybe we can read this as meaning he was trying to avoid the OHA and create a false record, you'd have to speculate about that. And you can certainly conclude that that piece of evidence brings you to that point beyond a reasonable doubt, and that's what we're looking at here. Let me just go back to this briefing sheet again. Yes, sir. And I know you said you didn't try the case, but before the jury, was it argued that the government never showed this briefing sheet to the jury, that it was never entered into evidence? I don't recall that that was argued, Your Honor. Okay, so it wasn't before the district court. That argument was not before the district court. No, but I believe you're correct. Man, and I know you make that argument in your reply brief. Yes. But is that sufficient to preserve that for appeal? Well, that is a factual matter because the absence of that briefing sheet... I don't believe so. Again, at trial counsel, I don't recall having made that argument. I accept your candor on that, but we have this question now. Is there any waiver of that argument? If there was doubt on the part of the defense, did the sheet actually explain the requirements of the OHA? And that was not raised before the district court. If it had been raised, the district court could have, or the government could have introduced that sheet into evidence. It's a situation where you could really sandbag the prosecution by not raising the argument of what the instruction sheet actually said before the district court, and then coming before us and saying, well, we don't know what that sheet says, so the government didn't need this burden of proof. Respectfully, Your Honor, I don't... Even if it wasn't raised at that point, the government had already arrested it, so the government couldn't have then come back and then moved it into evidence. Well, the government can always say, Your Honor, please, will you give us permission to... We didn't realize this was an issue. We have the sheet right here. May we enter it into evidence? And I, as a former trial judge, I think the judge would have said, sure. Maybe so, Your Honor. I just don't know. But again, what's before us is that the sheet wasn't introduced into evidence, and so us and the jury that made this decision didn't know what it said. And the question is whether a rational jury could have concluded guilt, beyond or musical doubt in the absence of that. And in the context of all the other evidence we're talking about, I still stand by the decision to take it not. Thank you, counsel. Thank you. Thank you. Ms. Vlasova? Yes, good morning. Good morning. May you please report? Anna Vlasova, behalf of the United States. As the record reflects, the government introduced sufficient evidence to show that the felon had specific intent and acted knowingly when he continuously sought and received OHA funds as reimbursement for the rent that he certified that he was paying monthly. Can you point us to anything in the record that explicitly notified him of the requirements of his program, that he could only receive allowances for the actual amount of rent? Where was he ever explicitly told that? Your Honor, the testimony that came in was that every year, Virgin Islands National Park conducts annual recertification for service members who receive OHA funds. During that annual recertification process, the service member receives a briefing and submits a new application along with a new lease if the old lease is expired. Now, that application clearly states that the service member has to provide the amount of rent that he is paying per month, and that that information is true and correct. That is the certification that the service member makes to the Virgin Islands National Park. But you had to prove specific intent. The OHA program works differently, which was the regime under which he worked for a decade or so. What informed him that in submitting that same kind of paperwork, where he was allowed to keep the differential, that under this program he was not? Where was he explicitly told that? And if it was in the briefing that he was given orally or if it was in the information sheet that's referenced in the certification, why were those introduced into evidence? And without that, what evidence is there on specific intent on which a rational jury could draw the inference that's needed? Well, the first piece of evidence is the testimony that every service member was receiving a briefing with an overview and regulations of what the OHA program was, which is a reimbursement-based program. It's not an entitlement-based program. In addition to that, every single... In talking about that, was there testimony that this specific inference existed that the payments were strictly reimbursement for amounts spent and not an overall housing allowance that could be actually expended or not, I think, upon the circumstance? Yes. The government presented evidence through Major James as well as Nina Clark Brewerly that the OHA program was designed as a reimbursement-based program. In fact, Nina Clark Brewerly testified that every amount that is wired into the applicant's account was designed to reimburse for the rent that that particular person was paying on that particular... Yes, but that's testimony about the program. And that's general testimony about here's how the program works, here's how it's distinguished from the BAH program, and the money goes into the USAA account. But was there any specific testimony about Mr. Lane or Colonel Lane was told this, and he was told this each and every year? Was there testimony about that? The evidence that we would have to look at is his certification that he's certified to every year, stating that he did receive that briefing sheet. Yeah, but you didn't put the briefing sheet in that. That is correct. However, the... So how does a jury know what the briefing sheet says? Because the briefing sheet, according to the certification, is an overview of the OHA program. But how does a jury know that? How do we know that? Because the evidence that came in was through Major James, who was in charge of reviewing the legal documents of that program, and Nina Clark Brewerly, who was in day-to-day contact with service members. All of those witnesses testified that the OHA program was specifically designed as a reimbursement-based program. On top of that, I would point to the application itself, which specifically asked for the amount of rent that the person was paying, in addition to the lease that the individual was providing. I would also note that, as a palant makes the argument that he was confused between the BHA program and the OHA program, the programs in terms of the lease and the requirement that the palant actually makes that payment is the same. The only difference is the formula based on which that amount is calculated. Now, even if the defendant was under the BHA program at the time, he would still have been required to submit a lease and show that he is, in fact, paying that amount of rent, as the palant was required under the OHA program. The only difference was in the formula upon which that amount was awarded. Your colleague represents that under the BHA program, that if someone is sleeping in their car and not paying rent, they're still entitled to claim the full amount of the amounts under the BHA program. What are you pointing us to to say, no, in fact, under that program too, you need to be paying some amount of rent? Yes, on page 375 of the record, we can see testimony that even under the BHA program, the service number is required to submit a lease that shows that he's, in fact, paying that amount for rent. The only difference was that the way that the BHA program is calculated, that amount is calculated based on rent and based on zip code. Now, in order to receive that BHA amount, the individual still has to pay rent. In addition to that, on page 403, we see testimony from Mr. Gower stating the same thing, that if the person is not paying for rent, they're not entitled to that amount even under the BHA program. That is why the individual is required to submit a lease as well, showing the amount, and that's the way the individual will be able to receive the BHA amount. So, under the BHA amount, if I submitted, if my allowance was $2,000 a month, and if I submitted a lease for $1,500 a month, I could still get the $2,000? Yes, that is correct. However, you do have to show by submitting the lease that you are, in fact, paying that $1,500 amount. Now, the $2,000 that the reference was made to was the amount that would be calculated based on the zip code and based on the rank and based on the number of dependents of that particular person. However, nowhere in the record does it indicate that an individual can be collecting BHA funds without actually paying for rent, similarly to the OHA program. However, the only difference is in the amount and the formula  But to take Judge Fischer's point, where even as to the BAH program, is there evidence in the record that that requirement was communicated to Colonel McLean, or Lieutenant Colonel McLean, in case I'm mistaken? Well, that portion of time would have been way prior to the conduct charge. What we have here is the testimony regarding how the BHA program works. That's general testimony as to how the program is supposed to work. These are criminal charges where specific intent to convert these programs into fraud needs to be proven by the government beyond a reasonable doubt. A rational jury needs to have some evidence in the record on which to base the finding of specific intent. Where is there evidence as to either program that these requirements were communicated to this defendant? Well, in reference to the OHA program, that would be several pieces of evidence. First of all, specifically the certification that he submitted. Second of all, we need to look at the lease. The certification just says that he's read a briefing sheet, and the briefing sheet is not part of the record and was not presented to the jury. What about that certification tells the jury he was notified that he couldn't collect the allowance without actually paying rent? Well, the reference that you made was only to one section of the certification that he signed. He was also certifying that the information that he provided in the application and the lease was truly correct, specifically that he was paying every month the amount of $21.50 to this particular individual by the name Erla John. Now, later on, the Virgin Islands National Guard came to find out that this was actually his mother, and her full name would have been Erla John A. Lee. Now, in viewing this evidence and laying most of it to the government, a rational charter of fact could conclude that that was done to conceal the fact that he was in fact renting from his mother and that he was not in fact paying rent as his certification indicated. What about the loan application? There were several loan applications that he submitted. In fact, there were several loan applications that he submitted. The two that were put in evidence clearly showed, as Special Agent Gally also testified based on her evaluation and investigation of this matter, that Appellant had way more debts and expenses on a monthly basis than the funds and deposits that were coming into his account. She also testified on page 588 of the record that based on her investigation, there was no indication that Appellant was in fact paying rent according to the lease as he submitted to the Virgin Islands National Guard to claim those funds to be reimbursed for his rent. Did he certify that he was paying no rent? Wasn't there a loan application where he said he was paying no rent? Yes, that is correct. In another loan application that he submitted, and this is specifically on page 1418 of the record, he specifically stated in that application where his goal was to get additional money because he was struggling, that he is currently living on a family estate. There is no monthly fees. And in viewing this evidence in light most favorable to the jury, a rational trier of fact would conclude that the defendant was claiming a certain version of the story as it suited him. When he was applying for the loan application, he stated truthfully that he was not in fact paying rent because that assisted in obtaining a higher amount of the loan. Now, what is also important is that there came a time when he was required to show that he was in fact paying for rent. He was required to show that there were canceled checks or other documents to show a wire transfer to his landlord. Now, a testimony from Colonel McDonald showed that if an individual is not able to produce those canceled checks or other forms of proof that the individual was in fact paying for rent, the OHA money would stop. Isn't that maybe an admission by the department that there's a change in policy? In fact, the record indicates that the policy wasn't placed prior to that memorandum. The memorandum was made in order to strengthen management controls and to eliminate any possible fraudulent claims. But it was clear through Colonel McDonald's testimony that that policy was in fact in place. But at this step of the process, they did start requiring the canceled checks or other proof. And in fact, he was very specific that that proof cannot be shown through cash or any payments that are cashed to the landlord. I guess one of the things that without this briefing sheet on the OHA program, I can't determine what the terms were. I can read the testimony of the government witnesses as to what they said the terms were, and that's what the jury could believe also. But I just wonder here, there's no question that he had a lease with Earl John, who turned out to be his mother, and he owed his mother $2,150 for every month that was covered by the indictment. Wouldn't he, without looking at those terms, couldn't you construe the reimbursement he received a reimbursement for the debt that he was incurring? He still owes the mother that amount of money. And couldn't you construe that as a reimbursement for the debt? For the debt that he used. Incurred under the lease. Well, the program is very clear that the reimbursement comes to the particular service member as reimbursement for that particular month. And actually, through testimony of Colonel McDonald at page 467, one of the other provisions, and we can also see that provision in the certification, that appellant promised to notify his commanding officer if there's any circumstances. Now, we know that a change in a monthly rent for even a particular month, or if that particular month's rent goes to zero, that would be considered a change in circumstances, which the appellant would have had to report to his commanding officer. That is one of the provisions of the certification that he made when he certified that he was paying this amount and he obtained federal money in response to that application. The service member who's deferring the payment and continues to defer the payment doesn't have a change in circumstances, right? May I respond? The change in circumstances was a reference to any change in the circumstances as opposed to the lease and the certification that a service member submitted. Now, if the individual's rental amount for that particular month changed, that would be considered a change in circumstances. But the amount of the change is simply a deferred payment. Is deferral of the payment a change in circumstance? The deferred payment is not a provision under the program because the program is designed to reimburse for that particular month. Now, if the service member paid $500 as opposed to $2150 that particular month, the program was reimbursing for just that $500, so that would be considered a change in circumstances, yes. Now, so you've referenced testimony. Are there actually regulations or is the information sheet part of any public documents or additional notice? The briefing sheet itself is not part of the record. The memorandum that was submitted by Kerr on McDonald is the certifications and the applications that were submitted by the service member, by the appellant court. In fact, in addition to that, the conduct that he engaged in, when he was in fact required to produce proof that he was paying, is part of the record, and that specifically starts on page 1471 in the Bank of Popular. What page is that again? 1471, the Bank of Popular records show that the account that he initially had in his name, another individual was added to by the name now Earl of John A. Lee, full name of his mother, as opposed to the Earl of John. Now, the appellant did not open a separate account in just his mother's name. He added her to his own account. And viewing that evidence in the light most favorable to the government rational... I guess it wasn't that page I was concerned about. What page is the O'Donnell Memorandum? Oh, I apologize, 1126. 1126. Again, are there regulations or guidelines that address the program beyond the testimony? The record reflects the testimony that was provided by Major Jeans and Nina Clark, who deal with this program on a daily basis and deal with service members on a daily basis through this program, who outline this particular program for the court. And as testified to by Nina Clark earlier, outlined this program during the briefing that they conduct for the service members. Is that to say that there are no regulations or guidelines that have been promulgated by the Guard or that you don't know as it's entered today? The previous policy was not part of the record, yeah. Thank you, counsel, for your argument. And, Sal, you're on your bow. Yes, if I could just address one or two points. First, I would draw your attention to Appendix Page 383, which I cited in the brief, where the judge advocate for the local first general's National Guard indicated that it's improper to rent from the relative, including from your mother. So the fact that he was renting from his mother is not an issue according to the National Guard and according to the record. What he certified when he did the certification, he gave a copy of the lease, which was approved, and the lease says that an amount is due and payable each month. He's not certifying that he's actually paying the full amount each month. There's no certification of that type that he's given over. He's simply certifying that that's his obligation. It's due and payable are the words that were used. We quote that in Page 6 of our brief, and that document is in the record. Indeed, that was due and payable, but his mother, under the lease, also had to write, and again, I cited that same page, specifically our Appendix 1106 that has the certification in it, and the lease did. His mother has the option of, obviously, deferring payment, and that's exactly what she did. So he was in compliance with his lease, and he did not make a certification to the authorities that was untrue. I'm sorry. The certification was for reimbursement, right? Yes. And reimbursement, you know, if I say, well, I'm coming to the Virgin Islands, and I submit a travel voucher, and then say, well, I didn't really come this time. I'm going in two months, but this reflects what I would pay in two months now. I'd get in big trouble because I'm not being reimbursed even though I have deferred payment of what I'm expected to pay. Respectfully, the obligation wouldn't have arisen either. At this point, though, his obligation to pay had arisen, and I would suggest that that would make a difference. He would have to every month. He owes that much to his mother. Counsel, isn't it a fair inference that the jury could draw on, or perhaps did, that he was simply not deferring payment? He was not incurring any obligation. Well, his mother testified that he owed her the money, and she expected to be paid. She testified she reminded him consistently he agreed with her that he owed that amount, and there was no evidence in the record at all that he wasn't going to hopefully pay. So I don't think that's contested anywhere in the evidence before the jury. But given how long this went on, a rational jury could, and perhaps here we conclude did, reject her testimony and her credibility, and prove to him that he was not incurring an obligation, period. Well, it would be contrary to all of the actual testimony in the case. Well, what about his loan application, where he says he's not paying rent? Right, and that was truthful. He wasn't paying rent. He had the obligation, but he wasn't out that money at that point, and he was expecting to have to pay it. So I think that also was a truthful statement on his part. Also, with respect to what he was told, I believe I heard, and I could have misheard, but I believe I heard counsel talk about the oral briefing that he received, and again, I believe when you look at the record, there's no evidence that in any of the oral briefings that he was told the details of this other program that applied in the personal accounts. Should we expect a higher degree of performance of understanding the obligation of, quote, reimbursement, unquote, from the lieutenant colonel than we should perhaps from the private personal assets? It's hard for me to answer that. I guess it would depend on the person. If a lieutenant colonel has not been involved in parsing the details of his various payment programs, but instead is focused on operational things, he may not know anything about it. And a private might be very curious about it, look into it. I just don't know that that would be – I can't say that a person of higher rank should know more about this in specific detail. And I think, again, I'm sure he would have to speculate if he were to go at the issue that way because there was no evidence of testimony about that. The certification also reports that Ike separately paid for all utilities, not only included in rental and lease agreements with landlords. Yes. Is there evidence in the record that he in fact paid utilities? I believe there is some evidence of that. I guess as I recall from some of the bank record portion, there was evidence that he was paying. Some of those. That's my recollection. I can't point you to specific citations because I can't recall. That wasn't something I really dug into. But I believe that he was, yes. My general recollection. Okay. We thank counsel. Both for an excellent argument. Today, I'm going to take the case under advisement.